(Haynes, J., of the sixth circuit, taking the place of Marvin, J.)

### AKRON, BEDFORD & CLEVELAND RAILROAD CO. v. LEWIS KECK.

STREET RAILWAYS—HIGHWAYS—ABUTTING OWNER'S RIGHT TO COMPENSATION.

Street railways, propelled either by horse or electric power, legally authorized and located in a public highway, are not a new and additional servitude entitling the owner of abutting land to additional compensation for the mere use of the highway or the destruction of trees standing thereon, made necessary for the proper location thereof, but where the owner is deprived of the means of ingress and egress to his premises, or the s me is made more inconvenient and burdensome, as where by the construction thereof large quantities of water are thrown upon his land which otherwise would have gone in another direction, his property rights are invaded, and he is entitled to compensation.

HEARD ON ERROR.

Allen & Cobbs and Ford, Henry, Snyder & McGraw, counsel for plaintiff in error.

Wilcox & Grant, counsel for defendant in error, cited:

As to steam railroads in highways the law has become fully settled in this state as well as many others, the rule being that as a matter of law they are an additional burden on the land owner not within the contemplation of the original dedication and that they constitute a diversion of the highway from its original uses so far as abutting owners are concerned. Railroad Co. v. O'Harra, 48 Ohio St. 343 [28 N. E. Rep. 175]; Lawrence R. R. Co. v. Williams, 35 Ohio St. 168; Railroad Co. v. Lawrence, 38 Ohio St. 41 [43 Am. Rep. 419]; Cincinnati & Spring G. A. St. Ry. Co. v. Cumminsville, 14 Ohio St. 523, 549, 550, and numerous cases.

As to street railroads, constructed in the center of and on the level of the highway and not interfering with the ordinary use of the highway, as a means of travel and of ingress to and egress from the abutting land and not substantially interfering with the land owner's property rights in the highway, are not, *per se*, an additional burden. Street Railway v. Cumminsville, *supra*, and especially at pages 549 and 550; Sells v. Street Railway Co., 11 Re. 643 (28 Bull. 172); Mt. Adams & Eden Park Inc. Ry. v. Winslow, 2 Circ. Dec. 240 (3 R. 425); Simmons v. Toledo, 3 Circ. Dec. 64 (5 R. 124); Schaff v. Electric Ry., 8 Circ. Dec. 688 (16 R. 252); La Crosse City Ry. Co. v. Higbee, 83 N. W. Rep. 701 [107 Wis. 389]: Briggs v. Railway Co., 10 Atl. Rep. 47 [79 Me. 363; 1 Am. St. Rep. 316]; Taggart v. Railway Co., 19 Atl. Rep. 326 [16 R. I. 668; 7 L. R. A. 205]; Nichols v. Railway Co., 49 N. W. Rep. 538 [87 Mich. 361; 16 L. R. A.

371]; Halsey v. Railroad Co., 20 Atl. Rep. 859 [47 N. J. Eq. 380]; Howe v. Railway, 44 N. E. Rep. 386 [167 Mass. 46]; Chicago, B. & Q. Ry. Co. v. Railway Co., 40 N. E. Rep. 1008 [156 Ill. 255].

It becomes a question of fact, for a jury to determine, under proper instructions by the court, whether or not the road as located, constructed and operated is an additional burden on the highway and the abutters' easements and interests therein and appropriates any substantial rights of the land owner. See all case cited in the last proposition and Zehern v. Electric Ry., 74 N. W. Rep. 538 [99 Wis. 26; 41 L. R. A. 575; 67 Am. St. Rep. 644]; Jaynes v. Omaha St. Ry. Co., 74 N. W. Rep. 67 [53 Neb. 631; 39 L. R. A. 751]; Detroit City Ry. Co. v. Mills, 48 N. W. Rep. 1007 [85 Mich. 634]; Hastings & G. I. R. R. Co. v. Ingalls, 16 N. W. Rep. 762 [15 Neb. 123]; Railroad Co. v. Hartly, 67 Ill. 439; Lareda Electric Ry. Co. v. Hamilton, 56 S. W. Rep. 998 [23 Tex. Civ. App. 480]; Pennsylvania R. R. Co. v. Railway Co., 31 Atl. Rep. 468 [167 Pa. St. 62; 27 L. R. A. 766; 46 Am. St. Rep. 659]; Chicago & N. W. Ry. v. Railway Co., 70 N. W. Rep. 678 [95 Wis. 561; 37 L. R. A. 856; 60 Am. St. Rep. 136]; Smith v. Commissioners, 50 Ohio St. 628 [35 N. E. Rep. 796; 40 Am. St. Rep. 699].

As to trees in the highway, see Daily v. State, 51 Ohio St. 348 [37 N. E. Rep. 710; 24 L. R. A. 724; 46 Am. St. Rep. 578], and especially the clause of the charge given on page 353 of that case.

The real question to be determined is, what was the fair market value of the property as a whole *immediately* before the construction of the road, and what was the fair market value *immediately* after the road was built and in operation, making no allowance for benefits which the property may have derived from the building of the road; the difference between these values so found, if any, is the true measure of compensation to which plaintiff is entitled. Atlantic & G. W. R. R. Co. v. Campbell, 4 Ohio St. 583 [64 Am. Dec. 607]; Hatch v. Railroad Co., 18 Ohio St. 92; Cincinnati & Ind. R. R. v. Zinn, 18 Ohio St. 417, 418; Railroad Co. v. Gardner, 45 Ohio St. 309, 322 [13 N. E. Rep. 69].

**HAYNES, J.**

The plaintiff in error, the railway company, owns and operates an electric railway between the city of Akron and the city of Cleveveland. The line of the road passes through the township of Boston, Summit county, and along the easterly side of the State road, so-called.

The defendant is now, and was at the time the railway track was located on said highway, the owner of a farm on the east side of said State road, and abutting on the highway, the boundary of which extended to the center of the highway. He has improved that farm and

occupies it as a homestead, his buildings being near this public highway.

Some time after the track had been located upon that highway in front of the premises of the defendant in error, he commenced proceedings in the probate court of Summit county to compel the appropriation of the property appropriated or occupied by the company, as he alleged, belonging to him, for the purpose of its railway, and of which at that time, he alleges, the company was in possession.

After certain preliminaries required by the statute a jury was impaneled in the probate court to assess such compensation and damages as the defendant in error was entitled to recover. At the close of the testimony the court, among other things, charged the jury as follows:

"One of the questions involved in this case is that of the character of the occupation of the highway by the defendant company. Is such partial occupation a new and additional servitude or burden, or is it not?

"This question is for the jury to determine and you are instructed that if you find from a fair preponderance of the evidence that the character of defendant's road and fixtures, the construction, operation and occupancy in and along said highway is of such a nature as to be incompatible with the usual modes of use thereof by the public and so as to practically exclude the public from the usual modes of use of that part of the highway so occupied, then the jury will be warranted in further finding that such occupation imposes an additional burden and servitude upon that part of plaintiff's property within the lines of said highway."

This charge, of course, permitted the jury, under certain circumstances, to return in behalf of the defendant in error compensation for the use made of the land within the limits of the highway, of which the defendant in error held the legal title.

This court has held in a somewhat similar case, that a street railroad, propelled either by horse or electric power, located in a public highway, is a legitimate, authorized public use of such highway, and a legitimate mode of travel and transportation thereof, and within the right appropriated to the public use by the original dedication or appropriation for a public highway. This to be exercised, of course, under proper regulations by the proper authorities. That such use, we have held, imposes no new servitude and does not entitle the owner of the fee to any additional compensation by reason thereof.

A petition in error is now pending in the Supreme Court to reverse that order in the case in which it was made, and so far as we are aware it is an open question in this state, not yet determined by the Supreme Court. And it may be doubtful whether we are right in this proposi-

tion. We are not disposed, however, to enter into any extensive discussion of this proposition to show its correctness, but await the determination of the question by the Supreme Court, which must be made within a reasonably short time. We adhere, however, to that holding until the Supreme Court shall have settled it adverse to such holding.

If that proposition be correct, then the proposition and charge to the jury was erroneous. Instead of the charge which we have quoted, the court should have said to the jury, in substance, that the defendant in error, as a matter of law, was entitled to no compensation by reason of any additional burden upon the land within the limits of the highway of which he held the legal title.

It does not follow, however, that the plaintiff was not entitled to any compensation on any account. As an owner of the land abutting on the highway the defendant in error may have certain rights and easements in the highway not common to the public, and for the invasion of such rights, property rights, and such only, the defendant in error was entitled to compensation. Those rights should have been definitely defined by the court and the recovery limited to the damages for the invasions of such rights. He was entitled to reasonable access to his lands. And if, by the location of this railway upon the highway in front of his premises, he was deprived of the means of ingress to and egress from his lot, or if the same was made more inconvenient and burdensome, he should have recovered just compensation for the loss and injury to such right. If, in the construction of the railway large quantities of water were thrown upon his land, which otherwise would have flown in another direction, it was an invasion of a property right for which he was entitled to compensation, under proper instructions from the court. But for the mere use of the highway, or the destruction of trees standing thereon, made necessary for the proper location of this railway legally authorized and located under a franchise legally granted, the owner was entitled to no compensation, and the jury should have been so told.

A request was made, in substance, the opposite to that given to the jury by the court. For the error in the charge, and the refusal to give request five, the judgment of the court of common pleas affirming the probate court is reversed, and the judgment of the probate court is also reversed, and the remanded to the court of common pleas for further proceedings.

There are other questions of error complained of, but I think that, under this rule, if it shall be finally sanctioned by the Supreme Court,

and the case is tried under the rule that we have here laid down, all other complaints of error made on this trial cannot again occur, and it is unnecessary, perhaps, to further consider them.

For these errors that I have named the judgment will be reversed and the cause remanded.